PHILLIPS' ADM'R  done to either separately, when increased by the propor-
*vs*  ·
BUSTARD *et al.*  tion of the salvage charges belonging to that article, still
falls far below the amount of ten per cent. on its value in
the policy, and the same difficulty occurs as to the amount
of extra freight, if any be properly chargable to the insurers
in that case, as when the whole cargo is considered as a
single subject of the insurance.  And as, without allow-
ing for the whole extra freight a considerable sum, (more
than $200,) the loss by damage to the goods and the sal-
vage charges, would not amount to ten per cent. on the
value insured on the bagging and rope, either separately
or in the aggregate, the plaintiffs were entitled to a judg-
ment for the salvage charges only, amounting to $118 99.

---

CHANCERY.  ## Phillips' Administrator *vs* Bustard *et al.*

*Case* 103.  ### ERROR TO THE JEFFERSON CIRCUIT.

#### *Trustees and Trusts.*

*May* 27.  CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

The case stated.  UPON a *bill* of *interpleader,* filed by *John Bustard* and
*Worden Pope* against several persons to whose use, as
the creditors of *John Gwathmey,* the latter had conveyed
to the complainants a large and various estate, *in trust,*
Decree of the  for sale and distribution of the proceeds—the Circuit
Circuit Court.  Court, after adjusting by a final decree the proportions
of each of them and ascertaining the payment of the
greater part thereof, decreed to the *trustees* "$3,275 to
"be retained by them for their *expenses* and *trouble* for
"selling the trust estate and collecting and paying out
"the trust fund."

That decree, so far as it allowed compensation for trouble and responsibility, is now sought to be reversed by the personal representative of *Richard Phillips* who, as a substituted and postponed creditor, might, perhaps, have been entitled to the sum thus decreed, had it not been yielded by the decree to the trustees.

PHILLIPS' ADM'R
*vs*
BUSTARD *et al.*

It was certainly the well settled doctrine of the *British Chancery*, antecedently to the *American revolution*, that a *trustee* was entitled to no *compensation* for time, trouble, skill, or service, unless there had been some provision therefor in the trust document.   And the only reasons for a rule, apparently so anomalous and unjust, were, 1st, that a trust should, *prima facie*, be deemed merely honorary and gratuitous on the part of the trustee; 2nd, an alleged difficulty in adjusting the proper rate of compensation; 3rd, that "by such an allowance, the trust estate "might be loaded and rendered of little value," and 4th, an assumed public policy, supported by the maxim of the civil law, in reference to *tutors* and *curators*, "*lucrum facere ex pupilli tutela tutor non debit.*"

Doctrine of the British Chancery before the revolution in regard to compensation to trustees.

This arbitrary rule established by Courts was, as early as the case of *Palmer* vs *Jones*, 1 *Vern.* 144, considered by *Lord Keeper North* "a great hardship."   *Chancellor Kent*, whose judicial motto was *via antiqua via est tuta*, virtually conceded, in *Manning* vs *Manning*, 1 *John. Chy. Rep.* 527, that this British rule, though he conformed to it, was unreasonable; and it has been evaded, even in *England*, by liberal constructions of trust documents, for the purpose of deducing from them a presumed intention to allow compensation, and also by making ample allowances for *expenses*.

We have never been able to perceive either consistency in the rule or full force in the reasons assigned for it. It should be no less true in the *municipal* than in the *divine* code, that "*the laborer is worthy of his hire,*" and there can be no doubt that heavy and responsible trusts are rarely, if ever, undertaken as merely honorary, without expectation of indemnity at least.   Moreover, there might be danger, not only of non-acceptance, but of injurious infidelity if strangers, nominated for their skill, should know that, for all their devotion, time, and

Trustees may, by our Courts, be indemnified and reasonably compensated for expenses, skill, and attention to trust duties, as other trustees, curators, executors, administrators, &c. without any express contract therefor.

responsibility, they can be entitled to no compensation unless they make a contract, which, in many cases, cannot be made for want of opportunity or competent parties. And we doubt not that, in most cases of onerous trust devolved on strangers, there is an implied mutual understanding, that there shall be a reasonable allowance for responsible, faithful, and beneficial services.

But the British rule has been extensively qualified, if not entirely exploded by the local law and usage of our own Commonwealth; where *tutors*, and *curators*, and *executors*, and *administrators*, are all entitled to reasonable *compensation*. Here then the civil law maxim and all the other analogies which fortified the rule in *England* have been abolished, and a converse principle has been recognized and established. Is there now, therefore, any sufficient reason here, for applying a rule so harsh and unreasonable to the solitary class of cases denominated express technical trusts? We think not.

Courts of Pennsylvania & Virginia allow compensation to trustees without any express contract therefor.

For similar reasons, the Courts of *Pennsylvania* and of our parent state *Virginia*, have decided that *trustees* may be entitled to compensation without any express direction or contract therefor: See 3 *Binney*, 457; 1 *Washington*, 246; 4 *H. & Mun.* 415. And this appearing to be intrinsically just, not forbidden by policy, and not only not inconsistent with any analogy in our local jurisprudence, but perfectly consistent with its complete harmony, we do not feel authorized to repudiate it and blindly adhere to the old English rule, the reasons for which, if ever good, are now altogether inapplicable in this age and country, *whenever it may be presumed that compensation was expected and seems to be reasonable and just.*

The record in this case furnishes intrinsic proof of the unreasonableness of withholding compensation from the trustees, whose labors and responsibilities appear to have been great and extensively beneficial. And we are not authorized to presume that the allowance, as made, was exhorbitant or in any respect unjust. From the character of the trust, the magnitude of the estate, the responsibility of the trustees, and the extent of their services, the allowance cannot be deemed unreasonable on *its* face,

and especially as the expenses of the trust, and of the consequential litigation must have been considerable. Moreover, it is far from being certain that injustice was not done to Bustard in refusing him a credit for $1900 he had loaned to Gwathmey, and the lapse of time since the decree (about 13 years,) would render it difficult to adjust the account for services by extraneous proof.

Although, therefore, in all such cases, the Court should take care not to make such an allowance as to tempt cupidity, induce trustees to act upon mercenary motives, or, by reducing the trust fund, essentially to frustrate the ends of the trust, we perceive nothing in this case that would authorize even a suspicion of inappropriateness or injustice in the allowance as made by the decree.

And consequently the decree for *compensation* and *remuneration* to the *trustees*, must be affirmed.

*Owsley* for plaintiff: *Crittenden* for defendant.