## BOONE COUNTY COURT *v.* H. F. SNYDER; ET AL.

**Validity of Judgment.**
> A judgment not void is binding upon all parties to it and those claiming under or through them, unless set aside or appealed from.

**Alteration of Judgment.**
> When the persons liable to taxation were ascertained by the judgment of the court, and the court adjourned, it lost all power to further revise or correct the judgment.

**Effect of Repeal of Statute.**
> The repeal of a statute giving a right or remedy destroys all rights and proceedings under and dependent upon it which are not so far perfected at the time the repealing act takes effect as to stand and be enforced without the aid of the act repealed.

**Special Tax.**
> A statute authorizing a special tax is a special authority and confers no powers which can be exercised in any other mode or at any other time than that fixed in the statute.

### APPEAL FROM BOONE CIRCUIT COURT.

June 28, 1878.

OPINION BY JUDGE COFER:

The judgment of the circuit court which was appealed from in the case of *Jenkins v. Boone County Court* was rendered and certified to the county court in April, 1872, and in July of that year the county court convened, as the order recites, "to levy the tax under the judgment of the Boone Circuit Court in the action of *Pryor B. Cloud v. R. F. Coleman,*" and a motion was then made "that this court now proceed to levy the tax upon the persons bound to pay the same as indicated by the judgment * * * and otherwise proceed to discharge the duties devolved upon it by said judgment."

That motion was carried, and the court, after releasing Snyder from the tax, rescinded the order, and it was ordered that "this court entertain no more motions to release persons from paying the county fund tax."

It was then ordered that for the purpose of discharging the amount adjudged by the Boone Circuit Court in the action of Pryor B. Cloud and others against the justices of Boone County Court and others, rendered at its April term, 1872, to be raised by certain assessments as set forth in said judgment, the following sums be assessed against the following persons, to wit: being persons liable to

pay subscriptions to the county fund, which remain unpaid and embraced in class described in the schedule annexed to said judgment, marked "C. D." The order then goes on to give a list of the persons embraced in that class, and so on with other classes following the opinion of the circuit court. At the same term the court elected a treasurer and collector.

After all this had been done in the county court in supposed compliance with the judgment of the circuit court, Jenkins and others prosecuted an appeal to this court from the judgment of the circuit court. That judgment was affirmed. After the return of the case from this court to the circuit court that court ordered "the Boone County Court to proceed with the execution of the judgment herein appealed from," meaning the judgment of April, 1872. That order and the mandate of the court of appeals was filed in the county court at its October term, 1876, and a motion was made to appoint a treasurer and collector. Motions were made by various individuals to be released from the tax, and a motion was made to extend the list and assess other persons not included in the assessment made in July, 1872. Without taking action on any of these motions the court, on motion of Watts and others, dismissed the proceeding for want of jurisdiction.

At the April term, 1877, of the Boone Circuit Court, the appellees moved the court to show cause, if they could, why they should not be compelled to collect and disburse the tax assessed pursuant to the judgment of the circuit court rendered in April, 1872. That rule was heard on the response of the judge and the justices, and evidence introduced by the parties, and the court awarded a peremptory mandamus commanding the county court to assemble on a designated day and then to elect a collector and treasurer as provided in the act of May, 1865, for the collection and disbursement of the tax assessed by the county court in July, 1872, and to make such further orders as might be needful for the full and complete execution of said judgment.

The order of the court of July, 1872, was an attempted compliance with the judgment of the circuit court of April. Whether or not it was in compliance with the judgment it is now too late to inquire unless it was wholly void. It has never been appealed from nor vacated or set aside. If valid when made it is valid now. The judgment of the circuit court was affirmed by this court, and the fact, if it be a fact, that the assessment made in July was not in all respects in conformity to the judgment of the circuit court as construed by

this court, cannot authorize the county court at this late day to revise its order or to correct the assessment. As we construed the judgment of the circuit court that judgment was conclusive as to two classes of persons, viz.: Those who were parties to the suit, and those who voluntarily appeared before the commissioner and took part in the investigation or appeared in court to except to his report.

As to persons not of either of these classes it was held that the judgment was presumptively correct, and that if any person belonging to the latter class who was held liable by the circuit court desired to question his liability in the county court he might do so, but the onus would be upon him to establish his right to exoneration; and it may be inferred both from the opinion of the circuit court and of this court that the county court could have subjected to taxation persons who were not adjudged by the circuit court to be liable.

But whatever power the county court had, and whatever questions were left open for further investigation in the county court, could only be exercised and the investigation could only be made at or before the time of assessing the tax and designating the persons liable for its payment, and all such power was at an end when the court made the order already quoted, that it would entertain no more motions to release persons from paying the tax.

When once the persons liable to taxation were ascertained and the court adjourned it lost all power to further revise or correct the list of those liable to assessment. We decided in Jenkins's case that under the judgment of April, 1872, certain persons were only prima facie liable, and that they had a right to show to the county court that they were not liable; but these should have done so before that court had exhausted its power over the subject. They may not have discovered their rights in this respect until this court construed the opinion of the circuit court, but this court's opinion gave them no new right, and it did not and could not reopen the question in the county court.

The rights of the parties were conclusively settled by the orders of the county court in July, 1872, and it was the duty of that court to do whatever was necessary on its part to the collection (and disbursement) of the tax from the persons named in its order as liable to taxation. Its duties thence forward were merely ministerial and their performance might be enforced by mandamus. The court also had power to award a mandamus as the only means of enforcing its judgment. Sec. 523, Myers's Code.

It is next insisted that the mandamus should not have been awarded because the act authorizing the levy and collection of a tax has expired by its own limitation.

We have already seen that a levy was made at its July term of the county court, in 1872, for the whole amount estimated to be necessary to pay the debt, and a collector was then appointed and was ordered to "proceed on and after the 1st day of October, 1872, to collect said assessment."

It is not claimed that the power of the county court to make the levy had then expired, and we see no reason for holding that the levy was not valid, and we have already decided that it is now too late to question or correct it. Nor did the appellees ask to have a new levy made. All they asked was to have a collector appointed to collect and a treasurer to receive and disburse the money.

But the only power the court ever possessed to appoint either a collector or treasurer was derived from the county fund acts, and the only power of the collector to collect the tax is derived from the same source, and the question whether these acts are still in force so far as to authorize the appointment of a collector and treasurer, and the collection of the tax by the former, must be met and decided.

It is a well settled rule that the repeal of a statute giving a right or remedy will destroy all rights and proceedings under and dependent upon it which are not so far perfected at the time the repealing act takes effect as to stand and be enforced without the aid of the act repealed. *Rex v. Justices of London,* 3 Burrows 1456; *Butler v. Palmer,* 1 Hill (N. Y.) 324; *Key v. Goodwin,* 4 M. & P. 341. In *Commissioners v. County Commissioners,* 20 Md. 449, and *Ellicott v. Levy Court,* 1 H. & J. 359, it was held that when a statute authorized a tax to be levied at a particular time it must be levied at that time, and cannot be levied afterwards.

The law in question in the latter case provided for the levy of a special tax at the same time at which the ordinary county levy was made. The special tax was not levied at that time, and those for whose benefit it was to be levied applied for a mandamus to compel the court to make the levy. The court said: "The act of assembly directs the money to be levied by a particular day—this is a special authority, and as the time has elapsed, the court thinks it would be improper to order a mandamus, as the levy court would have no authority under the law to make the levy."

In *Commissioners v. County Commissioners,* supra, the case of Endicott was reaffirmed. In that case it was made the duty of the

county commissioners to levy annually the sum estimated and reported to them by the board of commissioners of public schools as provided by law. The county commissioners failed to make the levy, and the commissioners of public schools applied for a mandamus to compel them to make it. The court said the prayer requires a mandamus to enforce a levy for a past year which the law "requires to be assessed within certain definite periods then passed." The estimates were required to be annual, and the levies to be annual. Is it competent for a judicial tribunal to direct a board of commissioners to impose a tax for special or particular purposes after the time prescribed by law? This question occurred very early in our judicial history, and was decided adversely to the petitioner, a decision which has been generally acquiesced in ever since.

These cases seem to be founded on the doctrine that if an authority is special it must be strictly pursued. 2 Salkeld 474; and where such authority is created by statute it must also be strictly pursued. *Rex v. Croke,* 1 Cowper 26. A statute authorizing a special tax is a special authority, and confers no powers which can be exercised in any other mode or at any other time than that fixed in the statute.

There are two acts relating to the Boone County Bounty Fund. The first provides that the county court may levy and collect such ad valorem tax, upon the real and personal property assessed for revenue purposes in said county, within any year, not exceeding the year 1872, inclusive; and in the discretion of said court said tax may be levied and collected in seven annual installments, or any other installments that said court may deem best.

The second act provided that the county court should meet on the first Monday in July, 1865, and on the first Monday in May every year thereafter, "and shall levy and collect such ad valorem tax upon the real and personal property assessed in said county for revenue purposes for this commonwealth, not beyond the year 1873, as may be sufficient in amount to meet such of the bonds (provided for in Section 1) and the interest thereon as may become due in such year, and the costs and expenses incurred in the execution of this law."

The act also provided for the appointment, by the county court, of a collector to collect the tax, and it may be gathered from various provisions of the act, though it is nowhere expressly declared, that it was intended to confer upon the collector all the powers possessed by sheriffs or collectors of the public revenue in collecting taxes due the state. The act does not, in terms, limit the power of appointing

a collector to those years in which it had power to levy the tax. But it is evident from numerous provisions in the act that the legislature intended and expected that the tax should be collected in annual installments in each of the years 1865 to 1873 inclusive. That the tax was intended to be annual is clear. The requisition of the act was that the justices should meet in July, 1865, and every year thereafter, and should levy and collect, not, however, beyond the year 1873, such tax as would be sufficient to meet such bonds and the interest thereon as might become due each year.

It further provided that the levies therein mentioned should be due on the 1st of August, in the year 1865, and every year thereafter on the 1st day of June; and still further that the collector should attend at his office from the 1st of August, 1865, until the 1st of November, and for the year 1866 from the 1st of June to the 1st of October, for the purpose of receiving payment of taxes; and that after the year 1866, between the 1st of September and the 15th of October, the collector should attend at some public place in each election district for the purpose of receiving taxes (Section 14); and it was further provided that the collector should, at the September, October and November terms of the county court in 1865, and at the July, August, September, October and November terms of said court for every other year, make a written statement under oath of the amount of taxes collected and in his hands, and pay the same over to the treasurer. Section 16.

From these and other provisions of the act it is certain the legislature intended the whole of the special powers conferred by the act to be exercised and completed before the end of the year 1873, and consequently the act did not confer on the county court any power to appoint a collector after the expiration of that year. Nor is there any hardship on these appellees in so deciding. The levy, as we have already decided, was made in July, 1872, and a collector was then appointed. Whether he qualified does not appear. But if he did not the court should have been applied to to appoint another. The appeal of Jenkins did not supersede nor suspend the levy and presented no obstruction to its collection.

Counsel for the appellees seem to regard the matter in the light of a contract, and insist that it would be absurd to hold that a party bound by contract to pay money and who is sued in apt time can by dilatory proceedings delay the payment until he will be released by lapse of time.

If the premises assumed were correct the conclusion would follow.

But the premises were not correct. This court did not rest its decision upon the ground that those bound were bound upon a contract, but that they were bound for a tax, not because they had promised to pay it, but because by their acts they were estopped to say that the act providing for the levy and collection of the tax was unconstitutional. In other words, the court decided that as to them the act providing for the levy and collection of the tax was valid, and that as to them the tax was not unconstitutional. And besides, if the liability is to be treated as a contract liability then it is clear that the whole action of the county court in the matter is void; and that court has no power to appoint a collector to collect.

Whether, therefore, we regard the liability of the persons assessed as a liability for a tax or for a debt due by contract we regard it as a matter now beyond the jurisdiction and power of the county court.

It results from these views that the court erred in awarding the mandamus, and the judgment is *reversed* and cause remanded with directions to dismiss the motion.

*McKee & Finnell, for appellant.    J. O'Hara, Jr., for appellees.*