Katherine Combs JARVIS and Hugh J. Caperton, Appellants

v.

NATIONAL CITY and PNC Bank National Association, Appellees.

No. 2011–SC–000135–DG.

Supreme Court of Kentucky.

Sept. 26, 2013.

**150**

Homer Parrent, III, Parrent & Oyler, Counsel for Appellants.

Virginia Hamilton Snell, Turney Powers Berry, Wyatt, Tarrant & Combs, LLP, Counsel for Appellees.

Opinion of the Court by Chief Justice MINTON.

Katherine Combs Jarvis and Hugh J. Caperton are the beneficiaries of testamentary trusts managed by trustees National City and PNC Bank.[1] Throughout the life of these trusts, Kentucky Revised Statutes (KRS) 386.180 mandated that testamentary trustees make a choice of compensation between either an annual fee or a fee at the termination of the trust. And these trusts present each of those statutory fee options. The Caperton Trust, managed by PNC Bank, operates under a termination-fee compensation option; and the Jarvis Trusts, managed by National City, apparently operate under an annual-fee option.

The General Assembly repealed KRS 386.180 in 2008, eliminating the rigid statutory structure for testamentary trustee compensation. So the Trustees immediately brought a declaratory judgment action in the trial court seeking a judicial determination of whether the repeal of the statute affects trustee compensation for trusts like the Caperton Trust and the Jarvis Trusts that were in existence for

1. For the sake of clarity, throughout this opinion the Appellants, Jarvis and Caperton, will be termed "the Beneficiaries"; and the Appellees, National City and PNC Bank, will be termed "the Trustees."

many years before the repeal of the statute.

The trial court ruled that the Trustees were not bound by the constraints of the former statute. The Beneficiaries appealed and the Court of Appeals summarily upheld the trial court, adopting the trial court's opinion as its own.

We granted discretionary review. Because we conclude that the repeal of KRS 386.180 was complete and unlimited, we affirm the Court of Appeals. Trustees of testamentary trusts may collect reasonable fees on trusts that predate the repeal of KRS 386.180.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The facts of this case are undisputed. At issue are three distinct testamentary trusts, the Katherine Lovern Craf Trust, the John Riley Craf Trust, and the Hugh J. Caperton Trust.

### A. The Jarvis Trusts.

Katherine Combs Jarvis is the beneficiary of two of the testamentary trusts at issue.[2] The Katherine Lovern Craf Trust was created in Craf's will, executed in 1998. The terms of the trust direct the trustee to remit the net income of the trust to Jarvis or apply the net income for her benefit for the duration of her life. At Jarvis's death, the trust is to terminate; and any remainder is to be distributed to Jarvis's daughter, Katherine Christina Jarvis. The trust lists National City as the trustee but has no term or language relating to compensation for any services rendered in fulfilling that role.

Jarvis is also the beneficiary of the John Riley Craf Trust created in John Riley Craf's will, executed in 1992. Again, the trust is to be managed by National City; but the trust is silent with regard to how National City is to be compensated. The John Riley Craf trust mirrors the Katherine Lovern Craf trust because it also directs the trustee to distribute the net income of the trust to Jarvis for the duration of her life. At Jarvis's death, the remainder is to be distributed to Jarvis's daughter.

National City accepted the appointment of trustee in November of 1999, following the acquisition of First Kentucky Trust Company, the actual listed trustee in each of the Jarvis trusts. Apparently, from statements of counsel at oral argument, National City has opted for an annual fee against the principal of the trust as its compensation for the management of the Jarvis trusts.

### B. The Caperton Trust.

Hugh J. Caperton is the beneficiary of a testamentary trust created by the will of his father, who died in 1944.[3] The terms of the trust direct the trustee to distribute the whole net income to Caperton for the duration of his life. The trust is to terminate upon Caperton's death; and the principal is to be distributed, per stirpes, to Caperton's then living descendants, if any. If Caperton dies without living descendants, the remaining principal is to be distributed, per stirpes, to the remaining living descendants of Caperton's father. There is no mention of trustee compensation anywhere in the terms of the trust.

The Caperton trust designates Fidelity and Columbia Trust Company, a predeces-

---

**2.** In the interest of clarity and brevity, the Katherine Lovern Craf and John Riley Craf Trusts will be referred to as the "Jarvis Trusts."

**3.** The will was executed in 1932.

sor of PNC, as the trustee. Again, the record is somewhat unclear on this point; but PNC's Senior Vice President and Trust Director stated in an affidavit that PNC has never assessed an annual charge on principal, instead opting to charge a termination fee of up to six percent on the value of the trust at the termination of the trust upon Caperton's death.

## C. Statutory Context and Procedural History.

Historically, the Kentucky General Assembly has placed a statutory cap on the allowable compensation for trustees of testamentary trusts. This ceiling was expressed in KRS 386.180, which was repealed in 2008. The statute mandated that trustees, when assessing fees from the principal of the trust, elect either annual-fee or termination-fee compensation mode and, further, only allowed fees to equal a certain maximum amount of the trust value. Fees assessed from the income of the trust were limited to no more than six percent of the income collected by the trustee. Further, the fees actually assessed by a trustee were subject to a determination of reasonableness by a court.

Following the repeal of KRS 386.180, in December 2008, the Trustees initiated this action in the trial court. The Trustees sought a declaratory judgment, under KRS 418.040, regarding their right to charge reasonable fees for their services rather than being limited to the rigid structure previously mandated by the statute. The Beneficiaries argued that the Trustees were bound by the compensation mode they elected under the former statutory regime. The Trustees filed a motion for summary judgment, asserting that the repeal of KRS 386.180 eliminated any and all restrictions on the calculation of trustee

fees. The Beneficiaries claimed that the repeal should only apply to trusts created after 2008 when the repeal went into effect. The trial court granted the Trustees' motion for summary judgment.

The Beneficiaries appealed the decision to the Court of Appeals. Again, the Trustees prevailed because the Court of Appeals adopted the decision of the trial court. We granted the Beneficiaries' request for discretionary review because the effect of the statutory repeal in question has widespread impact on the law of testamentary trusts across the Commonwealth.

## II. ANALYSIS.

On appeal, the Beneficiaries challenge two main aspects of the trial court's ruling and, in turn the decision of the Court of Appeals. First, the Beneficiaries claim that despite the repeal of KRS 386.180, the Trustees are bound to the respective compensation mode they elected. Furthermore, the Beneficiaries claim that the repeal should not operate retroactively and apply to trusts created before the date of the repeal because to do so would interfere with substantive, vested rights. Finally, the Beneficiaries claim that the Trustees have failed to include all of the necessary parties in the action, namely, the remaindermen.

 The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues of material fact. Here, the facts are undisputed. Accordingly, there is no mandate that this Court defer to the trial court.[4] As a result, we engage in de novo review of the issues presented.

## A. This Case Presents an Actual Controversy that is Justiciable.

Before dealing with the main arguments presented by the Beneficiaries, we must

---

4. *See Goldsmith v. Allied Bldg. Components,* *Inc.,* 833 S.W.2d 378, 381 (Ky.1992).

resolve an issue discussed in the lower courts. That issue is whether this case presents a justiciable controversy, whether it is appropriately susceptible of a judicial determination. Admittedly, both parties, in wanting the case resolved and their rights declared, prefer the same result on this issue. Furthermore, it appears that the Beneficiaries, having raised the issue to the trial court, have now abandoned it because they make no mention of the issue in the briefs submitted to this Court. Nonetheless, we feel the existence of an actual controversy is a preliminary hurdle that deserves our attention before proceeding further. We find this case does present a justiciable issue.

■■■ Of course, this Court does' not render advisory opinions.[5] This case arose as a declaratory judgment action under KRS 418.040, which provides that a court can make a binding declaration of rights but *only* if a justiciable issue is present.[6] We "will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties."[7] But we

"may declare the rights of litigants in advance of action when [we] conclude[ ] that a justiciable controversy is presented, the advance determination of which would eliminate or minimize the risk of wrong action by any of the parties."[8] Indeed, this is the very purpose of declaratory judgment actions.[9]

■■ This case presents two adversarial parties and the potential for wrong action by one of the parties. The record shows that the Trustees have not yet sought reasonable fees outside of the former statute's required maximums, but that does not preclude this case from being resolved by this Court. The Beneficiaries must compensate the Trustees for their services, and the parties disagree on how that is to be done. The declaratory judgment action allows the parties to have their rights and obligations declared without being forced to act improperly and initiate litigation after an injury has occurred. We believe there is a "justiciable controversy over present rights, duties or liabilities"; and a decision in this case "is not only expedient but is just, and is within the design and purview of the statute."[10]

5. *See In re Constitutionality of House Bill No. 222,* 262 Ky. 437, 90 S.W.2d 692 (1936); *see also Nordike v. Nordike,* 231 S.W.3d 733, 739 (Ky.2007) ("The Court will not render advisory opinions or consider matters which may or may not occur in the future.").

6. *See Veith v. City of Louisville,* 355 S.W.2d 295 (Ky.1962). For a recent example of the absence of an actual controversy, see *Foley v. Commonwealth,* 306 S.W.3d 28, 31 (Ky.2010), where this Court held it would be an advisory opinion to render a decision regarding a statute that had "no foreseeable application" to Foley. Here, the statute in question plainly applies to the parties before us.

7. *Veith,* 355 S.W.2d at 297 (quoting *Black v. Elkhorn Coal Corp.,* 233 Ky. 588, 26 S.W.2d 481, 483 (1930)).

8. *Combs v. Matthews,* 364 S.W.2d 647, 648 (Ky.1963).

9. *See, e.g.,* KRS 418.040. It should be noted that while not argued in the briefs to this Court and not mentioned by the trial court, KRS 418.045 at least arguably seems to allow the exact situation this case presents. KRS 418.045 reads, "Any person interested under a deed, will or other instrument of writing, ... or who as fiduciary, or beneficiary is interested in any estate, provided always that an actual controversy exists with respect thereto, may apply for and secure a declaration of his rights or duties, even though no consequential or other relief be asked."

10. *Dravo v. Liberty Nat. Bank & Trust Co.,* 267 S.W.2d 95, 97 (Ky.1954).

## B. The Repeal of KRS 386.180 Allows Trustees to Collect Reasonable Fees Going Forward for Trusts Created Before 2008.

The Beneficiaries argue that the Trustees are prohibited from seeking fees outside of the rigid fee structure formerly outlined in KRS 386.180. Put simply, the Beneficiaries believe that the Trustees should be bound to continue operating under the respective elections they made at the time of the trusts' creation. By this argument, the repeal of KRS 386.180 has no effect on the Trustees or any other trustees of trusts predating 2008. The Beneficiaries argue they have specific legal rights, enforceable by legal proceedings; and the repeal cannot strip those rights away. Essentially, the Beneficiaries argue, having relied on the Trustees' compensation election, a quasi-contract existed; and, now, the Trustees are estopped from seeking any other method of compensation, regardless of the repeal. We disagree.

In 2008, the Kentucky General Assembly enacted House Bill (HB) 615 making many changes to the laws governing the administration of trusts and estates. Included in the changes was the deletion of all statutory cross-references to KRS 386.180; and Section 4 of HB 615 read, "The following KRS section is repealed: 386.180 Compensation of trustees of estates." At the time of the repeal, the relevant portion of KRS 386.180 stated:

> Trustees of estates may receive for their services as such a commission of six percent (6%) of the income collected by them, payable as the income is collected. They may also receive an annual commission of three-tenths of one percent (.3%) of the fair value of the real and personal estate in the care of the fiduciary, or, at the option of the fiduciary and in lieu of the annual commission on principal, a commission which shall not exceed six percent (6%) of the fair value of the principal distributed, payable at the time the principal is distributed. In the absence of some provision, agreement, or direction to the contrary, the commission on income shall be paid out of the income from the estate, and the commission on principal shall be paid out of the principal of the estate.

The statute was commonly understood to cap trustee fees, paid from the income of the trust estate, at six percent of income annually. Further, the statute provided trustees with two options regarding compensation from the trust principal: (1) annual commission of three-tenths of one percent of the value of the trust *or* (2) commission not to exceed six percent of the fair value of. the trust, payable at the termination of the trust when principal is distributed. The Beneficiaries argue that the election by the Trustees of either annual compensation or compensation at the trust termination is binding despite the repeal of the statute mandating such an election. This argument is misguided.

Generally speaking, "without a reenactment of the repealed law in substantially the same terms," and "[with] no saving clause or general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as if it had never existed." [11] Here, it strains credulity to argue that the General Assembly did not intend wholly to repeal KRS 386.180. There was no language in HB 615 to indicate any portion or application of KRS 386.180 should remain. And it is the "cardinal rule of statutory con-

11. 73 Am.Jur. 2d. § 264. "The common law rule is that when a statute is repealed its repeal reaches back in time to eliminate any authority that existed under the statute." *City of Montpelier v. Barnett,* 191 Vt. 441, 49 A.3d 120, 131 (Vt.2012).

struction [ ] that the intention of the legislature should be ascertained and given effect." [12] In its express repeal of KRS 386.180, we find clear the intent of the General Assembly to remove any system of guidelines or restrictions on the compensation of testamentary trustees, to be clear.

The case of *First Security National Bank & Trust Co. v. des Cognets*[13] is illustrative of how a change in KRS 386.180 applies to trusts whose creation predates the date of the statutory change. In *des Cognets,* the court dealt with a trust created in 1922, sixteen years before the initial passage of KRS 386.180 in 1938. In fact, there was no statute governing the compensation of trustees in effect at the time the trust was created. "From 1938 to 1971 the Bank charged only a fee of five percent of income";[14] but, beginning on November 1, 1971, the Bank charged its first annual commission on the principal of the trust. The court was faced with the issue of whether the Bank was prohibited from collecting the annual commission on principal because it had already implicitly elected to receive commission at the termination of the trust. The court held that the Bank had elected to receive its commission upon the termination of the trust

and could not now seek an annual commission. In the court's opinion, not collecting annual fees for thirty-three years was sufficient indication of the Bank's election.

The Beneficiaries rely on *des Cognets* for the proposition that when a trustee makes its statutory election, he is bound and cannot change that decision. But the Trustees rely on *des Cognets* as the model for how this Court should resolve this case—apply the law in effect at the time compensation is sought. We find more convincing the argument by the Trustees. In looking at the *des Cognets* case, it is important to remember that the trust was managed for some sixteen years before the enactment of KRS 386.180 and the mandatory choice of compensation that followed. The court, in binding the Bank to its election of receiving compensation at the termination of the trust rather than an annual fee, focused only on the management of the trust during the thirty-three years KRS 386.180 was in effect.[15] In essence, the court held that the Bank's compensation system before the statute was not relevant to whether or not it had made an election under KRS 386.180.[16]

The repeal of KRS 386.180 operates in much the same way here. The Trustees

12. *MPM Financial Group, Inc. v. Morton,* 289 S.W.3d 193, 197 (Ky.2009).

13. 563 S.W.2d 476 (Ky.App.1978).

14. *Id.* at 477.

15. To be entirely accurate, the court alluded to the fact that Security Trust, the trustee bank where the trust was created, "had historically followed a practice of not paying itself an annual commission on principal trusts administered by it." *Id.* A reasonable reading allows for the inference that Security Trust did not charge an annual fee during the sixteen years before the statute's passage. Notably, there is no discussion relating this general historical practice to the trust at issue

created by des Cognets so we cannot be sure how Security Trust received commission. Presumably, the information was available to the court at the time. The omission is noteworthy.

16. The Beneficiaries, in relying on *des Cognets,* are hoist on their own petard when their argument is taken to its full conclusion. If the court in *des Cognets* found the argument of estoppel, now presented by the Beneficiaries, appealing and applied it, the method of compensation used during the sixteen years before the passage of the statute would have carried the day; and the court would never have applied the statute. In turn, the Beneficiaries would not be able to cite *des Cognets* as support.

concede that based on past performance, they have elected a termination fee for the Caperton Trust and annual-fee compensation scheme for the management of the Jarvis Trusts. But if compensation were sought today, it is our opinion that the *des Cognets* case would allow the Trustees to seek a reasonable compensation for services rendered, rather than having to comply with the strictures of KRS 386.180.

Applying the law in effect at the time compensation is sought is not a novel theory without significant support.[17] First, the testamentary trusts at issue in this case are silent with regard to trustee compensation. When the trust instrument is silent, statutes providing compensation guidelines or amounts govern. And when there are no applicable statutes, the fee shall be a reasonable one subject to challenge and the discretion of the court.[18] Accordingly, it is logical that when the legislature changes the statute, the compensation mode of the trustee changes accordingly. Second, presumably, KRS 386.180 was applied in the exact manner expressed today when it was amended in 1982. The statutory maximum compensation amounts were raised slightly by the General Assembly in 1982. According to the Trustees, they adjusted their rates accordingly, without challenge, and sought more fees because the statute allowed that. We see no reason not to apply the same reasoning to the repeal of KRS 386.180.

But the Beneficiaries argue that applying the repeal to the trusts at issue is effectively applying it retroactively, which violates the presumption against retroactive legislation. More simply, the Beneficiaries argue applying the repeal in this manner strips them of vested rights. We disagree. It is well settled that the General Assembly "may not arbitrarily, or without due process, by retroactive legislation terminate or impair the judicial rights of the litigant."[19] "The state may change or take away rights which were created by it, although it may not take away property which has vested by virtue of such rights."[20] In order for a right to be vested, there "must be more than a mere expectation of future benefits or an interest founded upon an anticipated continuance of existing general laws."[21]

We are unable to discern exactly what rights belonging to the Beneficiaries, vested or otherwise, would be taken away by applying the repeal of KRS 386.180 in this manner. The Beneficiaries seem to argue that their right to require the Trustees to continue with the mode of compensation they elected will be eliminated. Re-

---

**17.** "Normally, the statute in effect at the time the compensation is claimed controls, *regardless of when the trust was created.*" Restatement (Third) of Trusts § 38(1) cmt. c (2003) (emphasis added).

**18.** *See Humphrey v. McClain*, 219 Ky. 180, 292 S.W. 794 (1927) ("A trustee is entitled to a reasonable compensation where there is no contract as to what he shall receive."); 76 Am.Jur. 2d. § 577. The Beneficiaries argue that when a trustee accepts the appointment to manage the trust, he is bound by the terms of the trust. We agree with this contention. This is typically true but when the trust is silent, there are no terms for the trustee to agree to.

**19.** *Louisville Shopping Center, Inc. v. City of St. Matthews*, 635 S.W.2d 307, 310 (Ky.1982) (citing *Thweatt v. Bank of Hopkinsville*, 81 Ky. 1 (1883); 16A Am.Jur. 2d § 669).

**20.** *Id.; see also Boone County Court v. Snyder*, 9 Ky. Op. 918 (1878) ("It is a well settled rule that the repeal of a statute giving a right or remedy will destroy all rights and proceedings under and dependent upon it which are not so far perfected at the time the repealing act takes effect as to stand and be enforced without the aid of the act repealed.").

**21.** *Id.*

spectfully, we fail to see how this is the case. The Beneficiaries remain empowered with the statutory right to challenge the Trustees over *any* mode of compensation, even any new mode under the reasonableness standard. KRS 386.695 allows any "interested person" to petition the court to review not only the "reasonableness of the compensation determined by the trustee for his own services," but also the employment and subsequent compensation of any person hired by the trustee.[22] Notably, KRS 386.180 did not grant the Beneficiaries any right to challenge the compensation of the Trustee or otherwise mandate their compliance with a certain compensation mode. Again, the trust instruments at issue contained no language pertaining to trustee compensation; and, as a result, the Beneficiaries simply had a mere expectation that the compensation mode remain the same because of their "anticipated continuance of existing general laws."[23] And "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations."[24]

■■■ Today's decision, allowing trustees to seek a reasonable fee commensurate with their services, does not untie trust law from its historical moorings. In fact, we find it worthwhile to point out that Kentucky allowed trustees to seek reasonable compensation before KRS 386.180 was first enacted. Case law pre-KRS 386.180 is fairly consistent in holding that if documents creating the trust do not explicitly state the compensation to be paid, the trustee is entitled, like any service provider, to reasonable compensation.[25] Our research suggests that KRS 386.180 was the exception, not the rule, in the arena of compensation for those handling probate matters.[26] Further, in *des Cognets*, the Court, in discussing KRS 386.180, noted that "there [was] no similar statute in any other state."[27] And it is inarguable that Kentucky trust law and the respective duties imposed on trustees have changed since the inception of KRS

---

**22.** It is beyond question that KRS 386.695 applies to the trusts at issue. KRS 386.653 reads, "The provisions of KRS 386.650 to 386.675 shall apply to every trust, *regardless of the date on which it was established.*" (emphasis added).

**23.** *Louisville Shopping Center*, 635 S.W.2d at 310.

**24.** *Estate of Fridenberg v. Commonwealth*, 613 Pa. 281, 33 A.3d 581, 591 (2011).

**25.** We acknowledge that a significant portion of our case law deals with trustees not of the testamentary type, but we find these cases instructive on the general view of trusted compensation before KRS 386.180 was enacted. *See, e.g., Phillips Adm'r v. Bustard*, 40 Ky. (1 B. Mon.) 348, 350 (1841) ("Trustees may, by our Courts, be indemnified and reasonably compensated for expenses, skill, and attention to trust duties, as other trustees, curators, executors, administors, ... without any express contract therefor."); *Central Trust Co. v. Johnson*, 74 S.W. 663 (Ky.1903) ("[T]here is no fixed rule upon the [compensation of trus-

tees of express trusts], and the matter, from the very nature of such cases, must be left largely to the discretion and judgment of the courts before whom the settlement is made, as the character of the property, the circumstances attending its management, and the fidelity and success of the trustee, should all have a bearing in fixing the allowance."); *Patrick v. Patrick*, 135 Ky. 307, 122 S.W. 159, 161 (1909) ("As the will does not declare appellant shall not be compensated for the services he renders in executing the trust committed to him, we think the circuit court should allow him reasonable compensation therefor."); *Humphrey*, 292 S.W. at 796.

**26.** *See Phillips Adm'r*, 40 Ky. (1 B. Mon.) at 349 (noting that "tutors and curators and executors and administrators" were entitled to reasonable compensation, and there was no reason to deny trustees of "express technical trusts.").

**27.** *des Cognets*, 563 S.W.2d at 477.

386.180. While we offer no opinion on whether the fees outlined in KRS 386.180 fairly compensated trustees, we cannot help but acknowledge that in modern times, trustees often perform more services than they have in the past.[28] Contrary to the contention of the Beneficiaries, our opinion seems to right the ship rather than rock the boat.

 Nor does this decision in any way unleash trustees to charge exorbitant or arbitrary fees as they see fit. It is important to remain mindful that trustees are fiduciaries and must conduct themselves accordingly. First of all, in managing the trust, trustees are required by statute to "keep the beneficiaries of the trust reasonably informed of the trust and its administration."[29] It is accepted that this "may be satisfied by relatively informal reports that reveal trust assets and liabilities, receipts and disbursements, and other transactions involving trust property, and that disclose the amounts and bases of compensation paid to the trustee(s) and any agent(s) during the accounting period covered by the report."[30] As mentioned previously, beneficiaries are granted, by statute, the right to challenge the compensation of the trustee. The beneficiaries, with the aid of the court, may serve as a watchdog of trustee compensation and prevent any sort of exorbitant fees. Importantly, a beneficiary's review is not toothless as a trustee can be required to return any excessive compensation.[31] And let us not forget that a beneficiary is free to bring a breach of fiduciary duty claim or petition the court for the trustee's removal.

Second, and arguably most critical, courts are well-versed in assessing the rea-

---

28. At the time of the enactment of KRS 386.180, Kentucky fiduciaries operated under the "prudent man" standard. *See Citizens' Nat. Bank v. Jefferson*, 88 Ky. 651, 11 S.W. 767, 768 (1889) ("It was said ... that the power of the trustee is commensurate with the purposes of the trust, and must be exercised as a prudent man would with reference to his own affairs."); *People's State Bank & Trust Co. v. Wade*, 269 Ky. 89, 106 S.W.2d 74, 75 (1937) ("He must exercise the skill and judgment of a reasonably prudent businessman in preserving the estate, but at the same time make the estate productive."). However, Kentucky trustees now act according to the "prudent investor" standard. *See* KRS 286.3–277(1); *see also* KRS 386.454 (allowing fiduciary who is not a bank or institution to elect to have prudent investor standard apply); KRS 386.540. And while the General Assembly still finds it worthwhile to provide a list of "authorized investments," *see* KRS 386.020, trustees have more obligations under the prudent investor standard. For example, trustees are now under an explicit duty to diversify investments; and in reviewing whether a trustee properly fulfilled its duty as a fiduciary, a court is to look at the entire account portfolio rather than a single investment or action. *See* KRS 286.3–277(2)–(3).

Paralleling this broadening in trustee duties, the investment market has exploded. Trustees must often "conduct considerable research and analysis in each potential investment and in devising an overall investment strategy." *Estate of Fridenberg*, 613 Pa. 281, 33 A.3d at 590. Given the current landscape of trustee duties and obligations, the General Assembly had a completely legitimate purpose in removing any statutory caps on compensation. This forecloses any argument by the Beneficiaries that may have remained regarding retroactive legislation. *See General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) ("The retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process: a legitimate legislative purpose furthered by rational means.") (internal quotation marks omitted).

29. KRS 386.715.

30. RESTATEMENT (THIRD) OF TRUSTS § 83 cmt. b (2003).

31. KRS 386.695 ("Any person who has received excessive compensation from a trust may be ordered to make appropriate refunds.").

sonableness of compensation. Courts will not be overwrought with confusion because this is a task that we have routinely placed in their province. In fact, even under the former statutory regime, the compensation of testamentary trustees was still subject to a determination of reasonableness. KRS 386.180 only established the statutory *maximum.* Within that range, the court still had to decide that the "amount awarded [was] a reasonable fee under the facts of each particular case." [32] The repeal of KRS 386.180 does not suddenly strip a court of the ability to determine the reasonableness of fees awarded to a trustee. Trustees, under the law as it stands today, are entitled to be reasonably compensated for the services they render.

## C. All Necessary Parties are Present in the Case.

Finally, the Beneficiaries argue that the Trustees have failed to join all of the necessary parties to the litigation. It is the Beneficiaries' contention that the remaindermen listed in the respective trusts should be included because their interests may differ from those of the Beneficiaries. And the Beneficiaries argue that this failure is fatal to the case. We disagree.

The remaindermen are the descendants of the Beneficiaries. In order for the remaindermen to recover from the estate, they must survive the Beneficiaries. As a result, they are contingent remaindermen and have no vested interest. Accordingly, the Beneficiaries, as beneficiaries for life, can virtually represent the remaindermen.

The doctrine of virtual representation "recognizes that a party joined in a law suit may effectively represent another not so joined, where they have a common interest and the former may be depended upon to present the merits of the controversy which would protect the rights of the latter." [33] "The determining factor is such identity of interest as to give reasonable assurance that the contingent rights of the absent party will be protected by the person joined in the suit." [34] Here, we find that the contingent remaindermen, the children of the Beneficiaries, are adequately protected in the suit by the Beneficiaries. Despite the Beneficiaries and the remaindermen technically having different interests, lifetime beneficiaries and remaindermen, our case law is relatively clear that virtual representation is still acceptable.[35] The interests of the Beneficiaries and remaindermen in this litigation are sufficiently aligned such that we are "reasonabl[y] assure[ed]" that the contingent rights of the absent party will be protected by the person joined in the suit." [36] Their interests are similarly aligned. Furthermore, we cannot think of any new legal arguments or attacks that would be presented through the addition of the remaindermen. The absence of the remaindermen in no way impedes this Court from issuing a judgment on the issue presented here. Kentucky Rules of Civil Procedure (CR) 19.01 requires that a person be joined as a party if "complete relief cannot be accorded among those already parties" or if the absent person

---

32. *Curtis v. Citizens Bank & Trust Co.,* 384 S.W.2d 328, 329 (Ky.1964) (citing *Baker's Heirs v. Dixon Bank & Trust Co.,* 292 Ky. 701, 168 S.W.2d 24 (1943)).

33. *Carroll v. First Nat. Bank & Trust Co. of Lexington,* 312 Ky. 380, 227 S.W.2d 410 (1950).

34. *Id.* at 411.

35. *See, e.g., Hermann v. Parsons,* 117 Ky. 239, 78 S.W. 125 (1904).

36. *Harris v. Jackson,* 192 S.W.3d 297, 303 (Ky.2006).

claims an interest that may be impeded or impaired as a practical matter or could potentially subject the persons already parties to multiple liability or inconsistent obligations. We are not faced with such a situation in this case. The remaindermen were not required to be joined in this action because they are adequately represented by the Beneficiaries.

## III. CONCLUSION.

We affirm the Court of Appeals. The repeal of KRS 386.180 allows trustees to collect reasonable compensation for their services going forward.

All sitting. All concur.