RENDERED: APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1854-MR

TONY WRIGHT COFFEY; WADE A.                   APPELLANTS
MCNABB; AND EDWARD SPARKS

               APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE JOHN E. REYNOLDS, JUDGE
                ACTION NO. 19-CI-02310

LEXINGTON-FAYETTE URBAN             APPELLEES
COUNTY GOVERNMENT; LINDA
GORTON, MAYOR; AND LARRY
ROBERTS, FAYETTE COUNTY
ATTORNEY

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

ACREE, JUDGE: Appellants Tony Wright Coffey, Wade A. McNabb, and

Edward Sparks, all constables or deputy constables of Fayette County,[1] appeal the

---

[1] Wade A. McNabb (Fayette County Constable, District 1), Tony Wright Coffey (Fayette County Deputy Constable, District 1), and Edward Sparks (Fayette County Constable, District 3).

Fayette Circuit Court's November 21, 2019 order dismissing their case for failure to state a claim. We affirm.

**BACKGROUND AND PROCEDURE[2]**

On January 10, 2019, Ken Armstrong, Lexington-Fayette Urban County Government ("LFUCG") Commissioner of Public Safety, advised all Fayette County Constables that they were not allowed to equip or maintain emergency equipment, including blue lights, in or on their vehicles. *See* KRS[3] 189.950(6) ("Any constable may, upon approval of the fiscal court in the county of jurisdiction, equip vehicles used by said officer as emergency vehicles with one (1) or more flashing, rotating or oscillating blue lights . . . .").

Evidently, Appellants did not heed Armstrong's advice. They continued to maintain blue lights in their vehicles without proper authorization. In response, Keith Horn, an attorney for LFUCG, sent a letter, dated March 21, 2019, to all Fayette County Constables. It stated, in pertinent part:

> It has come to the attention of LFUCG that one or more of you have vehicles equipped with blue lights. As you have previously been informed, in accordance with KRS 189.950, you may not equip vehicles with or utilize blue lights without the approval of the Lexington-Fayette Urban County Council. The Council has not authorized you to use blue lights. You must immediately cease using

---

[2] The circuit court did not engage in fact finding. Our recitation of the facts is based on the uncontested facts in the record.

[3] Kentucky Revised Statutes.

-2-

and remove any blue lights installed in or on your vehicles. You are subject to citation for violation of KRS 189.950.

(Record ("R.") at 15.) Appellant McNabb acknowledged he received a copy of the letter. But, again, Appellants refused to remove all blue lights from their vehicles.

On April 4, 2019, Sergeant Merker and Lieutenant Bastian of Lexington Metro Police Department responded to a dispatched call advising that Appellant Coffey requested assistance with a traffic stop involving a suspected drunk driver. Upon their arrival, the officers observed blue lights in Coffey's constable vehicle. (R. at 16.) A criminal complaint and summons were served on Coffey for violating KRS 189.950. (R. at 16-19.)

On June 21, 2019, during the pendency of Coffey's criminal case, Appellants filed a Verified Petition for Declaratory Judgment and Motion for Temporary Injunction with the Fayette Circuit Court.[4] The petition alleged that KRS 189.950(6) was unconstitutional because it was in direct conflict with § 101 of the Kentucky Constitution, which states, "Constables shall possess the same qualifications as Sheriffs . . . ." Appellants contended, "[s]ince Sheriffs are qualified to equip their vehicles with blue lights without permission, then Constables constitutionally have the same qualifications." (R. at 9.) In addition,

---

[4] The petition listed LFUCG, Linda Gorton (Mayor), Larry Roberts (Fayette County Attorney), and Andy Beshear (former Attorney General) as defendants. Beshear was dismissed from the case. (R. at 85-87.).

they cited multiple statutes they believed authorized them to utilize blue lights on their vehicles. Appellants sought a declaration that KRS 189.950(6) was unconstitutional and a temporary injunction prohibiting LFUCG from enforcing KRS 189.950(6) and prohibiting Roberts from prosecuting Coffey until the circuit court ruled on the declaration of rights petition.

The circuit court denied Appellants' motion for a temporary injunction on July 3, 2019. (R. at 27-28.) Subsequently, both LFUCG and Roberts moved to dismiss the petition, arguing it was not justiciable and that Appellants failed to state a claim upon which relief may be granted. Specifically, Appellees contended that Appellants were using the Declaratory Judgment Act to collaterally attack the pending criminal proceedings against Coffey and that § 101 of the Kentucky Constitution and the statutes cited by Appellants were in no way related or contradictory to KRS 189.950(6).

The motion was argued before the circuit court on August 20, 2019. The circuit court subsequently entered an order dismissing the petition. The court concluded:

> The basis of the Plaintiff's complaint is that the Constables by way of § 101 of the Kentucky Constitution have the same powers as the Sheriff, which this Court disagrees with. Kentucky Constitution § 101 provides: "Constables shall possess the same qualifications as Sheriffs, and their jurisdictions shall be coextensive with the counties in which they reside. Constables now in office shall continue in office until their successors are elected and qualified."

-4-

Kentucky Constitution § 100 explains what these qualifications are. Simply put, these qualifications do not provide constables and the Sheriff with the same power. Instead, it simply provides for the qualifications, i.e. proper age, citizen of Kentucky etc. . . . , to become a Sheriff or Constable. *See Hall v. Hostetter*, 56 Ky. 784 (Ky. 1857).

(R. at 110.) This appeal followed.

## ANALYSIS

The Declaratory Judgement Act, KRS 418.040, provides:

In any action in a court of record of this Commonwealth having general jurisdiction ***wherein it is made to appear that an actual controversy exists***, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

(Emphasis added.) The requirement of an "actual controversy" relates to justiciability and is a preliminary hurdle to a party's ability to seek declaratory relief. *Jarvis v. National City*, 410 S.W.3d 148, 153 (Ky. 2013).

"[T]he question of justiciability focuses on 'whether there is a live controversy for the court to decide.'" *Berger Family Real Estate, LLC v. City of Covington*, 464 S.W.3d 160, 166 (Ky. App. 2015) (citation omitted). "For a cause to be justiciable, there must be a present and actual controversy presented in good faith by parties with adverse interests in the subject to be adjudicated." *Appalachian Racing, LLC v. Family Tr. Found. of Kentucky, Inc.*, 423 S.W.3d 726, 735 (Ky. 2014). As noted by our Supreme Court:

-5-

> The court will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties, and in which a binding judgment concluding the controversy may be entered.

*Foley v. Commonwealth*, 306 S.W.3d 28, 31 (Ky. 2010) (quoting *Veith v. City of Louisville*, 355 S.W.2d 295, 297 (Ky. 1962)). A court may, however, "declare the rights of litigants in advance of action when [we] conclude[ ] that a justiciable controversy is presented, the advance determination of which would eliminate or minimize the risk of wrong action by any of the parties. Indeed, this is the very purpose of declaratory judgment actions." *Jarvis*, 410 S.W.3d at 153 (quoting *Combs v. Matthews*, 364 S.W.2d 647, 648 (Ky. 1963)).

In addition to the justiciability requirement, Kentucky has long recognized other limitations on the use of the Declaratory Judgment Act.

> [T]he [Declaratory Judgment Act] was not designed, and is not suitable, for the determination of the procedural rules, or the ***declaration of the substantive rights involved in a pending suit***. Such decisions and declarations must be made in the first instance by the court whose power is invoked and which is competent to decide them.

*Jefferson Cty. ex rel. Coleman v. Chilton*, 236 Ky. 614, 33 S.W.2d 601, 603 (1930) (emphasis added); *see also Mammoth Med., Inc. v. Bunnell*, 265 S.W.3d 205, 210 (Ky. 2008) (The Declaratory Judgment Act "does not replace the existing system of remedies and actions. For example, an action for a declaratory judgment cannot

be instituted to secure a determination of substantive rights involved in a pending suit."). The facts of this case require that this Court address whether Appellants' claim is rightly before Court.

First, we point out that this action was brought during the pendency of Appellant Coffey's criminal proceeding on charges he violated KRS 189.950(6). The instant collateral action sought to declare that statute unconstitutional. As noted above, the Declaratory Judgment Act cannot be used to collaterally attack a pending criminal proceeding. The constitutionality issue should have been raised and litigated in Coffey's criminal matter. If the court presiding over the criminal trial disagreed with Coffey, he then could have sought appellate review.

Appellants argue this was not brought as a collateral attack. Instead, they contend this action was originally going to be filed in the Franklin Circuit Court on behalf of the Kentucky Constable Association and more than forty Kentucky constables, but Coffey's indictment forced them to expedite the process collaterally. Presuming the truth of this averment, it makes no difference. The end result is that Coffey has brought a collateral attack on the criminal statute under which he was charged. That is an improper use of the right of action created by the Declaratory Judgment Act. Accordingly, the petition should have been dismissed as to Coffey for this reason. However, we also find the circuit court's alternate reason, quoted above, is no less firm a reason for dismissing the petition.

Unlike *Coffey*, Appellants McNabb and Sparks were not criminally charged. As to them, this is not a collateral action. However, we agree with the circuit court that, even taking all their factual allegations as true, the petition fails on its face as a matter of law.

"[A] court should not grant [] a motion [to dismiss for failure to state a claim] 'unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . .'" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (quoting *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977)). "A motion to dismiss for failure to state a claim upon which relief may be granted 'admits as true the material facts of the complaint.'" *Id.* (quoting *Upchurch v. Clinton Cty.*, 330 S.W.2d 428, 429-30 (Ky. 1959)). Because this matter is purely a question of law, we review the issue *de novo*. *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 137 (Ky. 2018), *reh'g denied* (Mar. 14, 2019).

Appellants' first contention is that:

> KRS 189.950 is unconstitutional, being in direct conflict with § 101 of the Kentucky State Constitution which states that: "Constables shall possess the same qualifications as Sheriffs, and their jurisdictions shall be coextensive with the counties in which they reside." Since sheriffs are qualified to equip their vehicles with blue lights without permission, then constables constitutionally have the same qualification.

(Appellants' brief at 4.)  Appellants erroneously equate the words "qualifications" and "authority."  We find no merit in this argument.

In *Hall v. Hostetter*, our Supreme Court addressed the meaning of the word "qualifications," albeit in a different constitutional section of our old constitution.  56 Ky. (17 B. Mon.) 784 (1856).  The word has always been used in constitutional provisions in the context of minimum requirements, or qualifications, to hold an office.  In *Hall*, the Court said:

> after a careful examination of the constitution, we have come to the conclusion that the words, *qualifications* and *qualified,* are used therein, in their most comprehensive sense, to signify not only the circumstances that are **requisite** to render a citizen eligible to office, or that entitle him to vote, but also to denote an exemption from all legal disqualifications for either purpose.
>
> . . . The word *qualification* . . . implies not only the presence of every **requisite** which the constitution demands, but also the absence of every disqualification which it imposes.

*Hall*, 56 Ky. at 786 (emphasis added).

If "[c]onstables shall possess the same qualifications as Sheriffs," KY. CONST. §101, what does the Constitution say are the qualifications of Sheriffs? Read together, §§ 99 and 100 of the Kentucky Constitution tell us.  Section 100, which is entitled, "Qualifications of officers for counties and districts," in pertinent part says:

-9-

> No person shall be eligible to the offices mentioned in Sections 97 and 99 [which identifies Sheriffs] who is not at the time of his election twenty-four years of age (except Clerks of County and Circuit Courts, who shall be twenty-one years of age), a citizen of Kentucky, and who has not resided in the State two years, and one year next preceding his election in the county and district in which he is a candidate.

KY. CONST. § 100. These are the qualifications for the office of Sheriff and, pursuant to Kentucky Constitution § 101, they are the qualifications for the office of Constable. The right to display a blue light is not conferred upon sheriffs or constables by the Constitution. Regulating the display of blue lights by county officers is a prerogative of the legislature. No constitutional right is implicated in this case; KRS 189.950(6) is not in conflict with § 101 of our Constitution.

Next, Appellants cite several statutes they contend implicitly vest them with the right to equip their vehicles with blue lights.[5] In essence, they argue they are unable to perform their statutory duties without the use of blue lights. The circuit court, in its order dismissing, made no ruling on this argument, though it was made below. However, in its order denying Appellants a temporary injunction, the court concluded no statute vested constables with the authority to

---

[5] KRS 281.765 (authorizes constables to enforce traffic laws); KRS 189.520(2) (no peace officer shall fail to enforce the DUI statutes); KRS 525.015 (no person shall intentionally obstruct or disrupt an emergency responder from performing his or her official duties); KRS 189.920(2) (all municipal police and sheriffs' vehicles must be equipped with blue lights).

display blue lights in or on their vehicles without permission. We agree with that analysis.

Appellants place great emphasis on KRS 189.920(2), which states, "All state, county, or municipal police vehicles and all sheriffs' vehicles used as emergency vehicles shall be equipped with one (1) or more flashing, rotating, or oscillating blue lights . . . ." However, the Kentucky Supreme Court previously ruled that this statute does not vest constables with the authority to equip their vehicles with blue lights. *Commonwealth v. Bradley*, 516 S.W.2d 644, 644 (Ky. 1974). Although many of the statutes relied upon by Appellants pertain to the authority of constables, none grants the authority to display or maintain blue lights. *See id.* Nor do any of them directly conflict with KRS 189.950(6).

The case was properly dismissed for failing to state a claim.

## **CONCLUSION**

The Fayette Circuit Court's November 21, 2019 order is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

David A. Weinberg
Lexington, Kentucky

BRIEF FOR APPELLEE LARRY
ROBERTS, FAYETTE COUNTY
ATTORNEY:

Larry S. Roberts
Steven P. Stadler
Lexington, Kentucky

BRIEF FOR APPELLEE
LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT:

Evan P. Thompson
M. Keith Horn
Lexington, Kentucky