RENDERED: OCTOBER 28, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0053-DG
2020-SC-0477-DG

CITY OF FORT WRIGHT, KENTUCKY;  APPELLANTS/CROSS-APPELLEES
CITY OF COVINGTON, KENTUCKY; CITY
OF TAYLOR MILL, KENTUCKY; AND CITY
OF INDEPENDENCE, KENTUCKY


ON REVIEW FROM COURT OF APPEALS
V.        NOS. 2018-CA-1518 & 2018-CA-1569
FRANKLIN CIRCUIT COURT NO. 14-CI-01259


BOARD OF TRUSTEES OF THE
KENTUCKY RETIREMENT SYSTEMS  APPELLEE/CROSS-APPELLANT


**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING</u>**

In establishing the County Employees Retirement System ("CERS"), as well as the other public employee pension plans, the Kentucky legislature directed that trustees of the system hold its funds in trust and invest and reinvest them according to certain statutory standards. The question we resolve in this case is whether the Court of Appeals erred in affirming the Franklin Circuit Court's determination that the Board of Trustees of the Kentucky Retirement Systems ("Board") investment authority with respect to

CERS is governed by KRS[1] 61.650, and not by KRS 78.790 as argued by the Cities of Fort Wright, Covington, Taylor Mill, and Independence (collectively "Cities"). Following our review of the record and oral argument by counsel, we hold that the Court of Appeals did not err and therefore affirm its judgment.

## I.     Factual and Procedural Background.

The Cities filed this case in 2014 alleging improper investments by the Board in its management of CERS. This litigation is one of several unrelated actions filed seeking various forms of redress for the underfunding of several of Kentucky's public employee pension systems. *See, e.g., Ky. Emps. Ret. Sys. v. Seven Cnties. Servs., Inc.*, 580 S.W.3d 530 (Ky. 2019) (certifying law as to whether participating entity's contributions were statutory or contractual); *Overstreet v. Mayberry*, 603 S.W.3d 244 (Ky. 2020) (addressing claim for potential recovery of pension fund losses due to alleged risky investments).[2] The Cities claimed that Board's investment in unregulated hedge funds and private equity funds was prohibited by statute, specifically KRS 78.790, which,

---

[1] Kentucky Revised Statute.

[2] This underfunding has been a public issue over the last fifteen or so years. Jim Waters, *Commission Failed to Get Tough on State's Public-Pension Crisis*, Paducah Sun, Jan. 7, 2008, at A4 (criticizing recommendations of Gov. Fletcher's Blue-ribbon Pension Commission); Editorial, *Pension Reform Step in Right Direction*, Owensboro Messenger-Inquirer, Mar. 10, 2007, at 7A. The first case which presaged it, however, was decided over 25 years ago. *Jones v. Bd. of Trs. of Ky. Ret. Sys.*, 910 S.W.2d 710 (Ky. 1995) (holding that the Systems Board had no power to mandate rates of contribution and require their adoption by the legislature in funding public employees pensions).

they argued, incorporated restrictive investment language contained in KRS 386.020.[3]

The action was originally filed in Kenton Circuit Court. That court transferred the case to Franklin Circuit Court, presumably as the proper venue for actions against the Board. KRS 452.405(2).[4] The Board initially moved to dismiss, claiming sovereign immunity. The trial court denied that motion, which denial the Court of Appeals affirmed in an interlocutory appeal. *Bd. of Trs. of Ky. Ret. Sys. v. City of Fort Wright*, 2015-CA-000878-MR, 2016 WL 5319180 (Ky. App. Sept. 23, 2016). Following remand from the Court of Appeals, the trial court addressed the opposing motions for declaratory judgment, granting the Board's and denying the Cities'. The trial court determined the Board had broad discretion in making investments, KRS 61.650 and 61.545(21), and, therefore, its investments were permitted by Kentucky law. On appeal, the Court of Appeals affirmed. The Cities moved for discretionary review, which we granted.

---

[3] In more detail, the complaint alleged the Board had violated its statutory and fiduciary obligations by placing CERS funds in unauthorized and high-risk "alternative assets" investments, incurring substantial management fees (exceeding $50 million over a period of five years) in connection with these inappropriate investments. The complaint sought a declaration of the rights of the parties and injunctive relief. This latter remedy sought prohibition of investment in funds that are not registered pursuant to the Federal Investment Company Act of 1940, 15 U.S.C. Sec. 80a-1, et seq., including prohibition of paying management fees for such investments. The complaint further sought an accounting from the Board for the previous five years and a segregation and reallocation of investment assets in the three funds the Board administers: CERS, the Kentucky Employees Retirement System ("KERS") and the State Police Retirement System ("SPRS").

[4] The record available to us does not include any pleadings filed in the Kenton Circuit Court except the complaint.

3

## II.    Standard of Review.

Our review proceeds as a matter of statutory interpretation: whether the Board's authorized investments are controlled broadly by KRS 61.650, as argued by the Board, or more restrictively by KRS 78.780, as argued by the Cities.  Statutory construction is a question of law, which we review de novo. *Maupin v. Tankersley*, 540 S.W.3d 357, 359 (Ky. 2018).  We, thus, afford no deference to the interpretation given by a lower court.  "We interpret statutory terms based upon their common and ordinary meaning, unless they are technical terms.  We liberally construe our reading of a statute with the goal of achieving the legislative intent of the General Assembly regarding the statute's purpose."  *Id.* (citations omitted).

## III.    Analysis.

As noted, the Cities argue the standard for investing CERS funds is more restrictive than the standard for investing KERS funds.  While acknowledging that the Board has authority over the CERS funds, the Cities argue, nevertheless, that the Board is limited by KRS 78.790(1), which in turn incorporates the legal list of permitted fiduciary investments set out in KRS 386.020.  Conversely, the Board argues that its statute governing investments, KRS 61.650, is much broader, refers to the prudent investor standard[5] and

---

[5] The prudent investor standard seems to have its genesis in *Harvard College v. Amory*, 26 Mass. (9 Pick.) 446, 461 (1830), stating that as to investment decisions, a trustee is "to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested."  *See Jarvis v. Nat'l City*, 410 S.W.3d 148, 158 n.28 (Ky. 2013) (providing an overview of the prudent investor standard).

4

does not include the legal list set out in KRS 386.020. Admittedly, the interaction between KRS Chapters 61 and 78 could be clearer. Ultimately, however, our review of the history of these legislative enactments compels us to conclude that the Board, in this instance, has the better argument.

The Kentucky Employees Retirement System was enacted in 1956.[6] The section of the Act that was codified as KRS 61.650 governed the Board's investment authority. While the Board had "full authority to invest and reinvest," that authority was "subject to the limitation that no investment shall be made except upon the exercise of bona fide discretion, in securities which, at the time of making the investment, are, by law, permitted for the investment of funds by fiduciaries in this state." *Id.* While KRS 61.650 failed to cross-reference another statute, our review indicates that KRS Chapter 386, titled "Administration of Trusts; Legal Investments; Uniform Principal and Income Act" supplied the necessary list for KRS 61.650.[7] "Fiduciary" was defined as "any trustee, guardian, executor, administrator, conservator or other individual or corporation holding funds or otherwise acting in a fiduciary capacity." KRS 386.010. The legal list was set out in KRS 386.020, which provided that

---

[6] Act of Feb. 24, 1956, ch. 100, 1956 Ky. Acts 184.

[7] The trial court, in its order granting judgment for the Board, noted that our legislature has enacted many laws governing fiduciary investments. As true as that may be currently, in 1956, legal investments for fiduciaries was limited to KRS Chapter 386. For example, KRS 395.195, setting out "[t]ransactions authorized for personal representatives," was not enacted until 1976. Act of Mar. 30, 1976, ch. 218 § 24, 1976 Ky. Acts 482, 486. The authorized powers included "deposit or invest liquid assets of the estate, including moneys received from the sale of other assets, in federally insured interest-bearing accounts, readily marketable secured loan arrangements or other prudent investments which would be reasonable for use by trustees generally[.]" KRS 395.195(5).

(1) Any fiduciary holding funds for loan or investment may invest them in:

. . .

(g) Real estate mortgage notes, bonds, and other interest-bearing or dividend-paying securities (including securities of any open-end or closed-end management type investment company or investment trust registered under the Federal Investment Company Act of 1940) which would be regarded by prudent businessmen as a safe investment[[.]

That KRS 61.650(1) originally cross-referenced KRS 386.020(1) is conclusively demonstrated by amendments to the former in 1974 and 1984. Because KRS 386.020(1)(g) limited equity investments to dividend-paying securities, the legislature, in 1974, amended KRS 61.650(1) to expand the Board's investment discretion to include "common stocks in corporations that do not have a record of paying dividends to their stockholders."[8] In 1984, due to KRS 386.020(1)(h)'s requirement that fiduciaries obtain district court approval before investing in real estate, the legislature amended KRS 61.650(1) to clarify that the Board did not need such approval.[9]

Two years after creating KERS, the legislature established CERS.[10] The CERS Board, which was established separate from the KERS Board, had the

---

[8] Act of Mar. 26, 1974, ch. 128 § 27, 1974 Ky. Acts 233, 246.

[9] Act of Apr. 6, 1984, ch. 232 § 3, 1984 Ky. Acts 576, 579. In 1980, the legislature had also amended KRS 61.650 to include additional board duties as to the managed assets, including "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.] Act of Apr. 9, 1980, ch. 246 § 11(1)(b), 1980 Ky. Acts 752, 760. Because the legislature deleted these provisions in 2002, as discussed hereinbelow, we do not address them further.

[10] Act of Apr. 1, 1958, ch. 167, 1958 Ky. Acts 713.

6

identical investment authority.[11]  The CERS Board's investment authority was codified at KRS 78.790.  In 1960, the legislature decided to consolidate the CERS under the administration of the KERS Board, since KERS and the State Police Retirement System ("SPRS") were already under its direction.[12]  In that same Act, KRS 78.790 was amended to provide that the board, the KERS Board, was to be trustee of the CERS funds with "full power to invest and reinvest such funds subject only to the same limitations placed on the board . . . as set forth in KRS 61.650."[13]

In 1966, the legislature amended KRS 78.790(1) so that instead of referring to KRS 61.650, the two statutes contained identical language.[14] When the legislature amended KRS 61.650(1) in 1974 to permit investment in non-dividend-paying stocks, it similarly amended KRS 78.790(1).[15]  In 1984, however, with the amendment of KRS 61.650(1) in reference to not requiring district court approval to acquire real estate, the legislature did not amend KRS 78.790(1).  In fact, until the extensive revision of KRS Chapter 78 in 2020, which among other provisions moved administration of CERS to a board independent of the Board,[16] KRS 78.790(1) had not been amended since 1974.

---

[11] *Id.*, ch. 167 § 29.

[12] Act of Mar. 25, 1960, ch. 165 Part III § 2(1), 1960 Ky. Acts 676, 694.

[13] Act of Mar. 25, 1960, ch. 165 Part III § 3.

[14] Act of Mar. 17, 1966, ch. 34 § 13, 1966 Ky. Acts 263, 274.

[15] Act of Mar. 26, 1974, ch. 128 § 35, 1974 Ky. Acts at 251.

[16] Act of Apr. 7, 2020, ch. 79, 2020 Ky. Acts 340 (effective April 1, 2021).

7

Most importantly for our decision, in 2002, the legislature substantially revised KRS 61.650(1), including deletion of the reference to KRS 386.020.

> *(a)* The board shall be the trustee of the several funds created by KRS 16.510, 61.515, 61.701, and 78.520, *notwithstanding the provisions of any other statute to the contrary,* and shall have *exclusive* ~~full~~ power to invest and reinvest such funds *in accordance with federal law.*

> *(b) The board may establish an investment committee whose members shall be appointed by the board chairperson. The investment committee shall have authority to implement policy and act on behalf of the board on all investment-related matters with full power to acquire, sell, safeguard, monitor, and manage the assets and securities of the several funds.*

> *(c) A trustee or other fiduciary shall discharge duties with respect to the retirement system:*

> *1. Solely in the interest of the members and beneficiaries;*

> *2. For the exclusive purpose of providing benefits to members and beneficiaries and paying reasonable expenses of administering the system;*

> *3. With the care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with those matters would use in the conduct of an activity of like character and purpose;*

> *4. Impartially, taking into account any differing interests of members and beneficiaries;*

> *5. Incurring any costs that are appropriate and reasonable; and*

> *6. In accordance with a good-faith interpretation of the law governing the retirement system.* ~~, subject to the limitations that no investments shall be made except in securities which, at the time of making the investment, are, by law, permitted for the investment of funds by fiduciaries in this state, except that the board may at its discretion purchase common stocks in corporations that do not have a record of paying dividends to their stockholders and may acquire real estate without obtaining the approval of the District Court as set forth in KRS 386.020(1)(h). Subject to such limitations, the board shall have full power to hold, purchase, sell, assign, transfer or dispose of, any of the securities or investments in which any of the funds created herein have been invested, as well as of the proceeds of such investments and any moneys~~

8

belonging to such funds. The board members or any investment manager shall discharge their duties with respect to the assets of the several funds solely in the interest of the members and beneficiaries and:

(a) For the exclusive purposes of providing benefits to members and their beneficiaries and defraying reasonable expenses of administering the plan;

(b) With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

(c) In accordance with the laws, administrative regulations and other instruments governing the several funds.[17]

The wholesale change in the statutory investment authority of the Board with respect to not only KERS and SPRS but also CERS is apparent. In addition to deleting reference to KRS 386.020, the amended statute makes clear that the Board "shall be the trustee of the several funds created by KRS . . . 78.520, **notwithstanding the provisions of any other statute to the contrary**, and shall have **exclusive** power to invest and reinvest such funds **in accordance with federal law**." KRS 61.650(1)(a) (2002) (emphasis added).[18] While the

---

[17] Act of Mar. 15, 2002, ch. 52 § 12, 2002 Ky. Acts 321, 348 (additions are italicized; deletions are struck through).

[18] The legislature's reference to federal law is not clear, since the primary federal statute relating to retirement plans, ERISA, explicitly does not apply to state plans. *See* 29 U.S.C. § 1003(b)(1) (subchapter does not apply to governmental plans); 29 U.S.C. § 1002(32) (defining "governmental plan" as "a plan established or maintained for its employees by the . . . government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing[]"). The parties do not discuss this aspect of KRS 61.650(1)(a). We assume, without deciding, that the legislature refers to the fiduciary duties imposed by 29 U.S.C. § 1104. This statute relates to investment authority by requiring,

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

. . .

9

Board permissively "may" establish an investment committee, if it does so, that committee "shall have authority to implement policy and act on behalf of the board on all investment-related matters with full power to acquire, sell, safeguard, monitor, and manage the assets and securities of the several funds. KRS 61.650(1)(b) (2002). In 2010, the legislature changed the permissive direction of establishing an investment committee to a mandatory direction.[19] Finally, the Board members are directed, similar to the requirements of 29 U.S.C. § 1104(a)(1)(B), to discharge their duties "[w]ith the care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with those matters would use in the conduct of an activity of like character and purpose[.]" KRS 61.650(1)(c)3.

Our goal in statutory interpretation is to carry out the intent of the legislature. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012); *Saxton v. Commonwealth*, 315 S.W.3d 293, 300 (Ky. 2010) (stating that "[d]iscerning and effectuating the legislative intent is the first and cardinal rule of statutory construction[]"); *see also* KRS 446.080(1) ("All statutes of this state shall be liberally construed with a view to promote their objects and carry out

---

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so[.]

29 U.S.C. § 1104(a)(1).

[19] Act of Apr. 12, 2010, ch. 127 § 2.

10

the intent of the legislature[]").  The basic principles of statutory construction

have been expressed as

> We derive that intent, if at all possible, from the language the
> General Assembly chose, either as defined by the General
> Assembly or as generally understood in the context of the matter
> under consideration. We presume that the General Assembly
> intended for the statute to be construed as a whole, for all of its
> parts to have meaning, and for it to harmonize with related
> statutes. We also presume that the General Assembly did not
> intend an absurd statute or an unconstitutional one. Only if the
> statute is ambiguous or otherwise frustrates a plain reading, do we
> resort to extrinsic aids such as the statute's legislative history; the
> canons of construction; or, especially in the case of model or
> uniform statutes, interpretations by other courts.

*Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (internal

citations omitted).

The Cities argue that KRS 78.790(1) contains specific direction for the

investment of CERS funds and implicitly refers to KRS 386.020.  While we

might concur with the Cities on their cross-reference argument, we disagree

with the Cities' premise that KRS 78.790(1) governs CERS investments.  We

have resorted to an extensive examination of the history of the investment

statutes at issue.  The legislature in 1960 moved CERS administration to the

KERS Board.  At no point between 1960 and 2020 did the legislature enact any

measure that might lessen the Board's authority.  While it early tracked the

changes in investment authority in KRS 61.650 and 78.790, those efforts

largely ceased after 1974.  We can only surmise whether that omission was

mere oversight or was intentional, perhaps on the assumption that KRS 61.650

sufficiently addressed the Board's investment authority.  Regardless, the 2002

revisions to KRS 61.650(1) make clear that the legislature, "notwithstanding

11

the provisions of any other statute to the contrary," reaffirmed the Board's exclusive control of all investments and adopted the prudent investor standard for the Board in the administration and investment of all the funds under its umbrella, KERS, SPRS and CERS. To conclude otherwise would be to ignore the presumption that legislative amendments have purpose, namely to effect a change in the law, *Brown v. Sammons*, 743 S.W.2d 23, 24 (Ky. 1988); and the more specific presumption that the omission of a clause means the "omitted clause should no longer be the law." *Inland Steel Co. v. Hall*, 245 S.W.2d 437, 438 (Ky. 1952).

In other words, the 2002 deletion of the clause relating to "securities which, at the time of making the investment, are, by law, permitted for the investment of funds by fiduciaries in this state" from KRS 61.650(1) means that the Board was no longer limited by the KRS 386.020 list. While we remain unconvinced that the prudent investor standard and an investment "list," whether imposed by a grantor, a testator or the legislature are mutually exclusive, *see* Restatement (Third) of Trust §§ 227, 228 (Am. L. Inst. 1992), resolution of that issue is unnecessary.[20] The expression of a standard of care, like that in KRS 61.650(1)(c), "[w]ith the care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with those matters would use in the conduct of an activity of like

---

[20] We are, of course, aware of the legislature's enactment of KRS 446.082 in 2020. Act of Apr. 14, 2020, ch. 86, 2020 Ky. Acts 702. While this statute raises constitutional issues concerning separation of powers, we need not decide that issue today.

12

character and purpose[,]" clearly impose the prudent investor rule on the Board and generally authorize the sort of investments of which the Cities now complain.

## IV.    Conclusion.

Based on the foregoing, we affirm the Court of Appeals opinion that the Franklin Circuit Court correctly concluded that the Board's investments made on behalf of CERS were permitted by Kentucky law.  Like the Court of Appeals, we determine that the Board's cross-appeal is moot.

Minton, C.J.; Conley, Hughes, Lambert, Keller, JJ., sitting.  Minton, C.J.; Hughes and Lambert, JJ., concur.  Keller, J., concurs by separate opinion in which Conley, J. joins.  Nickell, J., not sitting.

KELLER, J., CONCURRING: I must fully concur with the Majority's thorough discussion regarding legislative history and statutory interpretation. However, I find value in the Cities' arguments insofar as they expose important concerns for the citizens of the Commonwealth.[21] I share in those anxieties, even as no legal harm has yet been caused.

Hedge funds are high-risk investments. *See generally Overstreet v. Mayberry*, 603 S.W.3d 244 (Ky. 2020). Hedge funds are large pools of invested

---

[21] These anxieties have been widely reported on within the Commonwealth. *See, e.g.*, John Cheves, *'Frontline' documentary investigates Kentucky's 'Pension Gamble' and teacher protests*, LEXINGTON HERALD LEADER (Oct. 23, 2018); John Cheves, *Hedge fund with $100 million in Kentucky retirement funds fails*, LEXINGTON HERALD LEADER (Jan. 6, 2012); Tom Loftus, *Kentucky Pension Crisis: You're on the hook, and this is what you need to know*, COURIER JOURNAL (Aug. 24, 2017); Christopher Burnham, *Kentucky Retirement Systems: A Case Study for Politicizing Pensions*, FORBES (June 29, 2018); Matt Taibbi, *Looting the Pension Funds*, ROLLING STONE (Sept. 26, 2013).

13

money managed, collected, and reinvested by hedge fund managers. SECS. & EXCHANGE COMM'N OFFICE OF INVESTOR EDUCATION & ADVOCACY, *Investor Bulletin: Hedge Funds*, SEC PUB. NO. 139 (Feb. 2013). Hedge funds, unlike mutual funds, are very loosely regulated. *Id.* Often, hedge fund investments offer "high risk, high reward" opportunities for investors. *Id.* This also means that hedge funds are more likely than highly-regulated mutual funds to lead to colossal losses. Because of this, hedge fund investment is most often used by financially sophisticated and wealthy investors who can stomach losses and monitor gains. *Id.*

Kentucky is only one of several states confronting the risks associated with investing public pensions in hedge funds. An investigation in Rhode Island in 2013 revealed that "state officials had secretly agreed to permit hedge fund managers to keep the pension in the dark regarding how its assets were being invested; to grant mystery hedge fund investors a license to steal, or profit at its expense using inside information; and to engage in potentially illegal nondisclosure practices." Edward Siedle, *Everyone is Urging the SEC to Stop Public Pension Management, Looting by Wallstreet*, FORBES (Oct. 7, 2021). A similar investigation in North Carolina by the Securities and Exchange Commission showed that irresponsible hedge fund investments cost North Carolinian pensioners $6.8 billion dollars. *North Carolina Pension's Secretive Alternative Investment Gamble: A Sole Fiduciary's Failed "Experiment"*, Benchmark Fin. Servs. 2, 3 (April 22, 2014).

14

Even though hedge funds are generally permitted under KRS 61.650, for the Board to invest in hedge funds, those investments must still comport with the language of the statute. If the Board takes such a risk, it must do so prudently, with "care, skill, and caution," as well as "impartially" and in "good faith." KRS 61.650(1)(c) 3, 4, 6. The investment must be made "[s]olely in the interest of the members and beneficiaries," with due consideration of "differing interests" amongst them. *Id.* at 1, 2, 4.

In short, the Board is called to invest funds according to beneficiary needs and interests. Beneficiaries are future and current retirees who depend on the returns on their retirement investments. If the Board is to adequately reflect their investment interests with caution, as it is required by statute to do, it may look to this case, and no further, in which some beneficiaries have stated clearly their displeasure with hedge fund investment.

Conley, J., concurs.


COUNSEL FOR APPELLANTS/CROSS-APPELLEES,
CITY OF FORT WRIGHT, KENTUCKY:

Amy Lynn Barrett Hunt
Ronald Richard Parry
Robert R. Sparks
Strauss Troy

Todd VanDerVeer McMurtry
Hemmer Defrank Wessels PLLC

COUNSEL FOR APPELLANTS/CROSS-APPELLEES,
CITY OF COVINGTON, KENTUCKY:

Amy Lynn Barrett Hunt
Ronald Richard Parry

15

Robert R. Sparks
Strauss Troy

Michael Patrick Bartlett
City of Covington

COUNSEL FOR APPELLANTS/CROSS-APPELLEES,
CITY OF INDEPENDENCE, KENTUCKY:

Amy Lynn Barrett Hunt
Ronald Richard Parry
Robert R. Sparks
Strauss Troy

Jack Scott Gatlin
Gatlin Voelker, PLLC

COUNSEL FOR APPELLANTS/CROSS-APPELLEES,
CITY OF TAYLOR MILL, KENTUCKY:

Amy Lynn Barrett Hunt
Ronald Richard Parry
Robert R. Sparks
Strauss Troy

Frank A. Wichmann, II
Wichmann & Schaffer


COUNSEL FOR APPELLEE/CROSS APPELLANT:

Robert William Kellerman
Stoll Keenon Ogden, PLLC