RENDERED: JULY 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0849-MR

LISA SOBEL; JESSICA KALB; AND
SARAH BARON                                                            APPELLANTS


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                     HONORABLE BRIAN C. EDWARDS, JUDGE
                        ACTION NO. 22-CI-005189


RUSSELL COLEMAN, IN HIS
OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE
COMMONWEALTH OF KENTUCKY
AND GERINA WHETHERS, IN HER
OFFICIAL CAPACITY AS THE
COMMONWEALTH'S ATTORNEY                                                 APPELLEES


                                    OPINION
                    AFFIRMING IN PART, REVERSING IN PART,
                              AND REMANDING

                            ** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND TAYLOR, JUDGES.

THOMPSON, CHIEF JUDGE: Lisa Sobel, Jessica Kalb, and Sarah Baron appeal

from an order granting summary judgment in favor of Russell Coleman,

Kentucky's Attorney General, and Gerina Whethers, the Jefferson County Commonwealth's Attorney. Appellants brought a declaratory judgment action claiming that certain statutes which regulated abortion in Kentucky were unconstitutional. This action followed the United States Supreme Court decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022). Since *Dobbs*, Kentucky law has prohibited abortion at any stage of pregnancy, except to protect the life or health of the mother. Kentucky Revised Statutes (KRS) 311.772(2) and (4).[1] This action did not allege that Kentucky's Constitution protects a right to an abortion but argues that the statutes regulating abortion could affect fertility treatment, specifically in vitro fertilization (IVF).

The trial court held that Appellants lacked standing to bring the lawsuit and dismissed the case. After reviewing the parties' briefs, the caselaw and statutes cited, and hearing the oral arguments, we believe the trial court was correct that two of the appellants, Ms. Baron and Ms. Sobel, lacked standing and affirm the dismissal of their causes of action. On the other hand, we conclude that Ms.

---

[1] We acknowledge that a few sections of KRS Chapter 311 which deal with abortion have recently been amended by 2025 House Bill 90, but it did not change the language of any of the statutes cited in this Opinion. 2025 House Bill 90 primarily creates new statutory sections related to freestanding birthing centers and their regulation.

Kalb does have standing; therefore, we reverse and remand in order for Ms. Kalb's claims to be reinstated.

## FACTS AND PROCEDURAL HISTORY

Ms. Sobel and Ms. Kalb have both undergone IVF and have one child each due to the procedure. Ms. Kalb also has nine embryos that are frozen and stored. In 2022, Ms. Kalb was scheduled to have another embryo implanted but canceled due to her uncertainty regarding Kentucky's abortion laws. Ms. Baron is a mother of two, is 38 years of age, and believes IVF would be the only way for her to become pregnant again. All three women are also Jewish, which is relevant because they have raised claims regarding freedom of religion.

All three women suspended any plans to bear a child via IVF due to the current laws in Kentucky regarding abortion. The primary argument of this case revolves around the embryos created with IVF. During IVF, multiple eggs of a woman are fertilized. This can lead to excess embryos that are not implanted in the woman. These extra embryos are either frozen and stored, disposed of, or donated. Appellants claim that the destruction of any unviable or unused embryos could lead to criminal charges relating to the death of an unborn child.[2] KRS

---

[2] Counsel representing the Office of the Attorney General has stated in its brief and during oral argument that the Attorney General has no intention of prosecuting women who choose to use IVF and who may dispose of unused embryos. While we acknowledge this pledge, we also acknowledge that the fifty-seven Commonwealth Attorneys in this state could elect to prosecute regardless of the assurance of the Attorney General.

311.772(3) makes it a Class D felony for anyone to intentionally cause the death of an "unborn human being." This does not apply, however, if the death of the unborn human results from efforts to save the life of the pregnant mother or to "prevent the serious, permanent impairment of a life-sustaining organ of a pregnant woman." KRS 311.772(4)(a). Unborn human being is defined as "an individual living member of the species homo sapiens throughout the entire embryonic and fetal stages of the unborn child from fertilization to full gestation and childbirth." KRS 311.772(1)(c). Other sections of KRS Chapter 311 also define an unborn child the same way. *See* KRS 311.720(8), KRS 311.781(9), and KRS 311.7701(16).

KRS 507A.020 defines fetal homicide as the intentional death of an unborn child and is a capital offense. KRS 507A.010(1)(c) defines unborn child as "a member of the species homo sapiens in utero from conception onward, without regard to age, health, or condition of dependency."[3] In simplest terms, Kentucky law generally makes it a crime to perform an abortion on an unborn child.

Appellants brought the underlying action pursuant to Kentucky's Declaratory Judgment Act. KRS 418.040 states:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for

---

[3] While this section is slightly different than those in KRS Chapter 311 because it requires the unborn child to be in utero, it still states that a child comes into being at conception/fertilization.

a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

KRS 418.045 states:

Any person interested under a deed, will or other instrument of writing, or in a contract, written or parol; or whose rights are affected by *statute*, municipal ordinance, or other *government regulation*; or who is concerned with any title to property, office, status or relation; or who as fiduciary, or beneficiary is interested in any estate, provided always that an actual controversy exists with respect thereto, may apply for and secure a declaration of his right or duties, even though no consequential or other relief be asked.  The enumeration herein contained does not exclude other instances wherein a declaratory judgment may be prayed and granted under KRS 418.040, whether such other instance be of a similar or different character to those so enumerated.

(Emphasis added.)  Appellants believed that Kentucky's statutes regarding abortion are vague and unintelligible, especially in how they deal with IVF.  They also claim that the statutes violate the Kentucky Religious Freedom Restoration Act found in KRS 446.350.  They further alleged that the statutes unconstitutionally impugn their religious beliefs by giving preference to Christian values to the detriment of their Jewish faith.

All parties agree that there are no issues of material fact, and this case is purely a matter of law.  All parties filed motions for summary judgment and a hearing was held on May 13, 2024.  On June 28, 2024, the trial court entered an

order finding that Appellants lacked standing to bring the lawsuit. The court held that because Appellants were not pregnant or undergoing IVF at the time, their injuries were hypothetical and there was no actual controversy. The court then granted summary judgment in favor of Appellees. This appeal followed.

## ANALYSIS

To reiterate, the trial court did not rule on the merits of this case but found that all Appellants lacked the standing to initiate the lawsuit. Before we begin with the arguments raised by Appellants on appeal, we will first discuss the interplay of standing and declaratory judgments.

> [F]or a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, [a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. [A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent[.] The injury must be . . . distinct and palpable, and not abstract or conjectural or hypothetical. The injury must be fairly traceable to the challenged action, and relief from the injury must be likely to follow from a favorable decision.

*Commonwealth Cabinet for Health & Family Servs., Dep't for Medicaid Servs. v. Sexton by and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185, 196 (Ky. 2018) (internal quotation marks, footnotes, and citations omitted). "Basically, the question in each case is whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007) (internal quotation marks, footnote, and citation omitted).

> And while an injury may be threatened or imminent, the concept of imminence cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for [constitutional standing] purposes – that the injury is *certainly impending*. Thus, the United States Supreme Court has repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact and that [a]llegations of *possible* future injury' are not sufficient.

*Overstreet v. Mayberry*, 603 S.W.3d 244, 252 (Ky. 2020) (emphasis in original) (internal quotation marks, footnotes, and citations omitted).

> Furthermore, the fact that Appellants sought declaratory relief has no bearing on constitutional standing in this matter. It is true that [t]he [Declaratory Judgment] Act allows courts to determine a litigant's rights before harm occurs. Even so, litigants may not establish constitutional standing by simply seeking declaratory relief. Instead, [a]n actual, justiciable controversy is a condition precedent to an action under our Declaratory Judgment Act. As such, Appellants must have constitutional standing to bring an action, regardless of the type of relief sought.

*Ward v. Westerfield*, 653 S.W.3d 48, 54-55 (Ky. 2022) (internal quotation marks, footnotes, and citations omitted). "The Act allows courts to determine a litigant's

rights before harm occurs, and requires the existence of an actual controversy. Such a controversy occurs when a defendant's position would impair, thwart, obstruct or defeat plaintiff in his rights." *Commonwealth v. Kentucky Retirement Systems*, 396 S.W.3d 833, 839 (Ky. 2013) (internal quotation marks and citation omitted).

> Of course, this Court does[] not render advisory opinions. This case arose as a declaratory judgment action under KRS 418.040, which provides that a court can make a binding declaration of rights but *only* if a justiciable issue is present. We will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties. But we may declare the rights of litigants in advance of action when [we] conclude[ ] that a justiciable controversy is presented, the advance determination of which would eliminate or minimize the risk of wrong action by any of the parties. Indeed, this is the very purpose of declaratory judgment actions.

*Jarvis v. National City*, 410 S.W.3d 148, 153 (Ky. 2013) (internal quotation marks, footnotes, and citations omitted). "The declaratory judgment action allows the parties to have their rights and obligations declared without being forced to act improperly and initiate litigation after an injury has occurred." *Id.*

> The criterion that should govern the courts is not that there is a present controversy but a justiciable controversy over present rights, duties or liabilities. This is so although the effect of the judgment is prospective. A declaration in such a case is not only expedient but is just, and is within the design and purview of the statute.

*Dravo v. Liberty Nat. Bank & Tr. Co.*, 267 S.W.2d 95, 97 (Ky. 1954).

We now address the arguments raised by Appellants. First, they argue that they did have standing to bring their cause of action because the law in Kentucky surrounding abortion is confusing and they are afraid they will be punished if they dispose of any unviable or unused embryos created by IVF. They claim that because the law considers a human life as beginning at fertilization, an embryo created outside of the mother during IVF would be considered an unborn child pursuant to Kentucky statutes. Even though Appellees respond that the statutes do not apply to such embryos, Appellants argue the law is not so clear and they cannot access IVF without potentially putting themselves in legal peril. "Whether Appellants have standing is a jurisdictional question of law that is reviewed *de novo*." *Ward*, 653 S.W.3d at 51 (emphasis added) (footnote and citation omitted).

We agree with the trial court that Ms. Sobel and Ms. Baron do not have standing to pursue their claims. There was no evidence presented that they are currently involved in any IVF treatment, have taken any steps to begin the IVF process, or have embryos remaining from prior treatment. They simply state that they *might* want to have children in the future. Our Supreme Court has held that allegations of possible future injury do not satisfy the requirements of standing. *City of Pikeville v. Kentucky Concealed Carry Coalition, Inc.*, 671 S.W.3d 258,

265 (Ky. 2023). This is too speculative and does not create an impending injury. We believe Ms. Kalb, on the other hand, does have an imminent injury and Ms. Kalb needs the court to clarify her rights.

The trial court relied on *Roe v. Wade*, 410 U.S. 113, 120, 93 S. Ct. 705, 710, 35 L. Ed. 2d 147 (1973), *overruled on other grounds by Dobbs*, *supra*, to support is decision. While standing was not the primary issue in that case, the trial court found it illustrative. Briefly, the facts in *Roe* were that Jane Roe was living in Texas and sought an abortion; however, Texas only allowed abortions if the mother's life was threatened by the pregnancy, which was not the case here. John and Mary Doe were also parties to the case. The Does were a childless couple and Ms. Doe did not want to become pregnant at that time. The Does argued that Ms. Doe should be able to receive an abortion should she accidentally become pregnant. Roe and the Does sought a declaratory judgment that the Texas abortion laws were unconstitutional.

Roe was found to have standing because she was pregnant at the time she filed her cause of action. On the other hand, the Court found that the Does did not have standing. The Court stated:

> Their claim is that sometime in the future Mrs. Doe might become pregnant because of possible failure of contraceptive measures, and at that time in the future she might want an abortion that might then be illegal under the Texas statutes.

-10-

This very phrasing of the Does' position reveals its speculative character. Their alleged injury rests on possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health. Any one or more of these several possibilities may not take place and all may not combine. In the Does' estimation, these possibilities might have some real or imagined impact upon their marital happiness. But we are not prepared to say that the bare allegation of so indirect an injury is sufficient to present an actual case or controversy.

*Id.* at 128, 93 S. Ct. at 714.

In the case at hand, the trial court held that all three women lacked standing because they were not currently pregnant or undergoing IVF. As previously stated, we agree with the court as it pertains to Ms. Sobel and Ms. Baron, but we disagree as it pertains to Ms. Kalb. While not a pregnancy case like *Roe*, we find the case of *Jamgotchian v. Kentucky Horse Racing Commission*, 488 S.W.3d 594 (Ky. 2016), persuasive.

In *Jamgotchian*, Jerry Jamgotchian, an owner of thoroughbred horses, purchased a horse at Churchill Downs in Louisville, Kentucky. Due to certain Kentucky horse racing regulations not relevant to the case at hand, that horse could not be sold or race anywhere else but Churchill Downs for a certain amount of time. During the timeframe where the horse was not allowed to race outside of Churchill Downs, Mr. Jamgotchian tried to enter the horse into races in Pennsylvania. The horse ended up not racing in any of those races. Mr.

-11-

Jamgotchian claimed that the failure to race in Pennsylvania was due, at least in part, to these Kentucky regulations; however, no sanctions were ever issued against Mr. Jamgotchian. Mr. Jamgotchian then brought a declaratory judgment action seeking a declaration that not allowing him to race his horse outside of Churchill Downs during this prohibition period was unconstitutional.

One of the issues in *Jamgotchian* was standing. The Kentucky Horse Racing Commission argued the court lacked jurisdiction because there was no actual case or controversy. The Commission's argument was because the horse did not race during the prohibition period and Mr. Jamgotchian was not sanctioned, Mr. Jamgotchian had no standing. The Commission also argued that claims by Mr. Jamgotchian that he might have been sanctioned for the original horse or might be sanctioned in the future if he tries to ignore the prohibition period with a future horse are too speculative.

The Kentucky Supreme Court disagreed with the Commission's argument and held Mr. Jamgotchian did have standing. The Court held:

> Jamgotchian was, and apparently remains, an eligible [purchaser] under Kentucky's thoroughbred [purchasing] rules with a demonstrated interest in exercising that eligibility and exercising it in a way the Commission is apt to deem "wrongful." Eliminating or minimizing such a genuine risk of "wrong" action by any of the parties is the very purpose of declaratory judgment actions.

*Id.* at 603 (internal quotation marks and citation omitted).

In other words, because Mr. Jamgotchian was eligible to purchase more horses at Churchill Downs, showed an interest in doing so, and demonstrated an intent to flout the regulations, he had the required standing and was allowed to challenge the regulations. Ms. Kalb, in the case *sub judice*, has shown a similar interest and intention. Ms. Kalb currently has nine embryos frozen and awaiting implantation, disposal, or donation. She also canceled an embryo implantation in 2022 due to her uncertainty surrounding Kentucky's abortion laws. Her decision as to what to do with her frozen embryos is being thwarted by her uncertainty surrounding the abortion laws. Her injury is impending because she has shown she wants to use the frozen embryos but is unsure of her options. Ms. Kalb is paying money to keep the embryos frozen. Should she continue to do so in perpetuity because the government will not clarify what she can and can't do with them? No. This is not a speculative issue because these embryos currently exist, and Ms. Kalb is entitled to know her options without fear of potential legal peril. As to Sobel and Baron, there is no impending threat. A threatened injury must be certainly impending to constitute an injury in fact. *Commonwealth v. Bredhold*, 599 S.W.3d 409, 417 (Ky. 2020) (citations omitted).

Appellants also raise issues related to their religion. They claim that their Jewish faith requires them to increase their family and multiply. They argue that restricting their access to IVF due to the unclear notion of unborn child and

-13-

unborn human being violates their religion. They also claim that their faith prioritizes the life of a mother over the life of a fetus; therefore, restrictions on abortion violate their faith. Further, they claim that their faith does not support the idea that life begins at conception, rather that a fetus becomes a child only once it exits the mother's body. They claim that the laws in Kentucky surrounding abortion are Christian in nature and do not take into consideration their faith.

For the same reasons as discussed above, we agree with the trial court that Ms. Sobel and Ms. Baron do not have standing. As for Ms. Kalb, we again disagree with the trial court. Ms. Kalb has taken active steps to get pregnant. She has nine embryos in frozen storage ready for her use and she scheduled, but ultimately canceled, an embryo implantation in 2022. Ms. Kalb's actions show imminence in a potential injury sufficient to satisfy standing for her religious-based claims.

## CONCLUSION

Based on the foregoing, we affirm the summary judgment in favor of Appellees as it pertains to Ms. Sobel and Ms. Baron. These two women do not have standing as their potential injuries are too speculative. We reverse the summary judgment as it pertains to Ms. Kalb because her injuries are not too speculative and satisfy the standing requirement for a declaratory judgment action. Ms. Kalb's claims should be reinstated, and we remand for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Aaron Kemper
Ben Potash
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANTS:

Ben Potash
Louisville, Kentucky

BRIEF FOR APPELLEES:

Russell Coleman
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

John H. Heyburn
Principal Deputy Solicitor General

Lindsey R. Keiser
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Matthew F. Kuhn
Solicitor General